NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13860

SUNPIN ENERGY SERVICES, LLC, & another[1]  vs.
ZONING BOARD OF APPEALS OF PETERSHAM.


Suffolk.     April 8, 2026. - July 14, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Wolohojian, JJ.


Renewable Energy.  Public Utilities, Energy company, Electric
     company.  Electric Company.  Electricity.  Zoning, Special
     permit, Permitted use, By-law, Board of appeals:  decision.
     Municipal Corporations, By-laws and ordinances.  Practice,
     Civil, Summary judgment.


     Civil action commenced in the Land Court Department on
December 17, 2021.

     The case was heard by Jennifer S.D. Roberts, J., on motions
for summary judgment.

     After review by the Appeals Court, 105 Mass. App. Ct. 641
(2025), the Supreme Judicial Court granted leave to obtain
further appellate review.


     James F. Martin (Jonathan S. Klavens also present) for the
plaintiffs.
     Michael E. Shamgochian (David J. Doneski also present) for
the defendant.
     The following submitted briefs for amici curiae:

---

[1] Ralph P. Lapinkas, Jr.

Thaddeus Heuer & Zachary Gerson for Solar Energy Industries Association & another.

Margaret E. Sheehan for Community Land and Water Coalition, Inc., & others.

Andrea Joy Campbell, Attorney General, & Seth Schofield, Assistant Attorney General, for the Attorney General.

Kate Moran Carter, Kathleen M. Heyer, & Nicholas P. Shapiro for Real Estate Bar Association for Massachusetts, Inc., & another.

KAFKER, J.  The plaintiffs, Sunpin Energy Services, LLC (Sunpin), and Ralph P. Lapinkas, Jr., seek to build a large-scale ground-mounted solar energy system in the town of Petersham (town), a rural town that is ninety-seven percent forested.  Based on the location of the project and pursuant to the town's zoning bylaw (bylaw), Sunpin applied for a special permit from the zoning board of appeals (board), the town's special permit granting authority.  One of three board members voted to deny the application primarily because the project would require significant tree cutting, contrary to her interpretation of the bylaw's intent and purpose.  Because the vote was not unanimous as required by G. L. c. 40A, § 9, twelfth par., the application was denied.

The plaintiffs then challenged that decision by commencing this action in the Land Court, and a judge granted summary judgment in favor of the board's denial of the permit.  The plaintiffs then appealed to the Appeals Court, which vacated the judgment on the ground that the board's decision was arbitrary

and capricious.  We granted the board's application for further appellate review.

We conclude that, in accordance with the Dover Amendment's solar provision, G. L. c. 40A, § 3, ninth par. (paragraph nine), a town must provide reasonable opportunities to build solar energy systems and may not deny a special permit for such a project unless doing so is necessary to protect public health, safety, or welfare.  This requires individualized and site-specific reasons for denying a special permit application.  Where, as here, the town is ninety-seven percent forested and the application was denied primarily because of generally applicable concerns about tree cutting, such a denial is effectively a blanket prohibition on large-scale ground-mounted solar energy systems in the town.  Because sylvan as well as urban communities must provide reasonable opportunities for solar energy facilities and because this blanket prohibition is not necessary to protect public health, safety, or welfare, the denial of the special permit was improper under paragraph nine.  Accordingly, we vacate the judgment of the Land Court and remand the matter to that court for entry of an order remanding the matter to the board for further proceedings consistent with this opinion.[2]

---

[2] We acknowledge the amicus briefs submitted by the Solar Energy Industries Association and Alliance for Climate

1. Background. a. Facts. The following facts are undisputed. The town is ninety-seven percent forested and is entirely zoned as residential-agricultural. The town has established a solar electric overlay district (SEOD), in which "large-scale ground-mounted solar electric installation[s] (greater than 10 [kilowatts])" can be constructed as of right. The SEOD is a single town-owned parcel of land spanning 5.16 acres. Any large-scale ground-mounted solar electric installations outside the SEOD require a "special permit," which is governed by §§ 11.2 and 18 of the town's bylaw.

The proposed site of the project in this case is on property located outside of the SEOD. On March 30, 2021, Sunpin prepared an application for a special permit and site plan review for the project. The site is on land owned by Lapinkas and consists of undeveloped forests and wetlands. There are five direct abutters to the property, including privately owned undeveloped land, two residential lots, and the Riceville Pond

Transition; Community Land and Water Coalition, Inc., the Wareham Land Trust, Save Massachusetts Forests, RESTORE: The North Woods, Trees as a Public Good, Carver (MA) Concerned Citizens, Climate Action Now Western MA, Concerned Citizens of Franklin County, and East Quabbin Land Trust, Inc.; and Real Estate Bar Association for Massachusetts, Inc., and the Abstract Club. We further acknowledge the amicus letter submitted by the Commonwealth.

site of the Harvard Forest.[3]  The Harvard Forest is comprised of 4,000 acres of land, research facilities, and a museum, and, since 1988, has been "a Long-Term Ecological Research Site, funded by the National Science Foundation to conduct integrated, long-term studies of forest dynamics."  Harvard Forest, About Us, https://harvardforest.fas.harvard.edu/about/about-us [https://perma.cc/F8KF-2PAW].  Public access to the Riceville Pond site is allowed for recreation, including hiking, dog-walking, fishing, hunting, bird and other wildlife watching, and nature study.  The proposed project location also has frontage along a public way, New Athol Road.

    The project is a 4.3-megawatt (direct current) photovoltaic generation and 2.0-megawatt energy storage system and requires the construction of a ground-mounted solar array and battery racks.  The entire solar array will be enclosed with a seven-foot-high chain link fence and a locking gate.  The property consists of approximately twenty-four acres, and the majority of the site is wooded.  Trees that shade the 14.3-acre portion of the property where the array will be located -- the equivalent of approximately eleven football fields -- will be cleared in order to maximize the energy output of the system.  Sunpin obtained an order of conditions from the town conservation

---

    [3] The Harvard Forest is a department of the Faculty of Arts and Sciences of Harvard University.

commission under the Wetlands Protection Act, G. L. c. 131, § 40, allowing the project to proceed.

A public hearing on Sunpin's special permit application and site plan was held on several days from June to September 2021 before the board. At the close of the hearing, and after deliberation by the board, two board members voted to approve the application and one voted not to approve the application. Because G. L. c. 40A, § 9, twelfth par., requires a unanimous vote of a three-member board to grant a special permit, Sunpin's application was denied.

The dissenting board member, Maryanne Reynolds, submitted a twenty-six-page statement of reasons setting forth her findings and the reasons for her vote. Reynolds explained that although Sunpin satisfied the specific requirements for large-scale solar installations outlined in § 18 of the bylaw, § 18 also requires obtaining a special permit pursuant to § 11.2 for such projects. Approval of a special permit requires findings that (1) "the use involved will not cause or give rise to noise, odor, refuse, exterior lighting, traffic or other considerations which would be offensive or detrimental to the present or future character of the neighborhood or the community"; and (2) "the proposed use will not derogate from the intent and purpose of this By-law." Section 1 of the bylaw states that this intent and purpose "is to promote the health, safety and general welfare of the

inhabitants of [the town]; to lessen the danger from fire; to maintain the beauty of [the town]; to secure the proper growth of [the town] by encouraging the most appropriate use of land and buildings; and to stabilize the value of property."

In Reynolds's view, although the project could satisfy several of these requirements with appropriate conditions, granting the special permit would still be improper, primarily because of the significant tree cutting it would require.[4] Referencing guidance published by State executive agencies, Reynolds noted that the contemplated deforestation thwarts the Commonwealth's energy policy goals because forests provide water management, cooling and climate benefits, habitats for wildlife, recreational opportunities, and carbon storage. Reynolds further opined that granting the special permit here would be inconsistent with the town's master plan, as it would facilitate "the usual, unfortunate trajectory" in which "natural lands are fragmented and punctuated with houses and businesses, then, as additional waves of development occur, built areas are joined together and filled in until the remaining natural lands have been fragmented into small, isolated pieces with greatly reduced

---

[4] Reynolds also discussed other reasons for her vote, including that the commercial project is out of character with the residential area, a fire could release chemicals from the solar panels, and the project would have a negative effect on property values.

environmental value."  Finally, Reynolds observed that it is

"unclear" whether the board would approve a special permit for

any future large-scale project outside the SEOD, explaining:

> "If all future proposed projects are similar to the present
> one (substantial destruction of natural resources without
> clear community benefits), then the answer is no, but there
> is always the possibility of an approvable project. . . .
> It is foreseeable that solar panel array technology will
> evolve . . . in ways we cannot yet conceive.  For now, it
> is the [b]oard's responsibility to adhere to the
> requirements of the By-laws and to trust that we will know
> an approvable project when it comes before us."

In sum, Reynolds concluded that the project "will derogate from

the intent and the purpose of the By-laws" because it "would

cause the destruction of forest on New Athol Road and replace it

with an industrial compound not suited to the residential

character of the neighborhood," and thus it "is neither

essential nor desirable to the public welfare to grant a special

permit."

b.  Procedural history.  On December 17, 2021, the

plaintiffs filed a complaint in the Land Court to annul the

board's decision, alleging that the board acted in an

unreasonable, whimsical, arbitrary, or capricious manner when it

denied the application for a special permit.  On the parties'

cross motions for summary judgment, the Land Court judge granted

summary judgment in favor of the board, reasoning that Reynolds

properly applied the criteria and standards articulated in the

bylaw to the facts before the board.  See Sunpin Energy Servs.,

LLC vs. O'Neil, Mass. Land Ct., No. 21 MISC 000626, slip op. at 13 (Aug. 8, 2023). In her written decision, the Land Court judge noted that "[§] 1 of the [bylaw, on which Reynolds relied,] describes its purpose as being, in part, 'to promote the health, safety and general welfare of the inhabitants of [the town],' and . . . G. L. c. 40A, § 9, ninth [par.], allows regulation of solar energy systems 'to protect the public health, safety or welfare.'" Id. at 10-11. The Land Court judge emphasized that Reynolds more broadly "challenged the siting of [Sunpin's project] on property that would require cutting a significant number of trees, because 'maintaining trees assists the Commonwealth's energy policy goals because of the important water management, cooling and climate benefits trees provide." Id. at 12.

The plaintiffs appealed from the Land Court judge's decision to the Appeals Court. On July 9, 2025, in a published opinion, the Appeals Court vacated the judgment, reasoning that the board's special permit decision was an abuse of discretion and arbitrary and capricious because it was based on an improper preference for forest preservation over solar energy siting, as well as conjecture about future development in the town. See Sunpin Energy Servs., LLC, 105 Mass. App. Ct. at 648.

We granted the board's application for further appellate review.

2.  Discussion.  a.  Standard of review.  At issue here is whether the board's decision constitutes an unreasonable regulation of the installation of solar energy systems.  As we have explained, a trial judge reviewing the decision of a zoning board of appeals "makes [her] own findings of facts and need not give weight to those the board has found."  Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 474 (2012).  See G. L. c. 40A, § 17; Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 558-559 (2012).  "The judge then 'determines the content and meaning of statutes and by-laws and . . . decides whether the board has chosen from those sources the proper criteria and standards to use in deciding to grant or to deny the . . . special permit application.'"  Shirley Wayside Ltd. Partnership, supra, quoting Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73-74 (2003).  "After determining the facts and clarifying the appropriate legal standards, the judge determines whether the board has applied those standards in an 'unreasonable, whimsical, capricious or arbitrary' manner."  Shirley Wayside Ltd. Partnership, supra at 475, quoting Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 382 (2009) (Wendy's).

Here, the Land Court judge granted the town's motion for summary judgment.  "We review a decision on a motion for summary

judgment de novo and, thus, accord no deference to the decision of the motion judge" (quotation and citation omitted). Tracer Lane II Realty, LLC v. Waltham, 489 Mass. 775, 778 (2022) (Tracer Lane). The facts as referenced by the Land Court judge are undisputed.

b. The requirement of a unanimous decision of the board. We begin by noting that, as explained supra, Sunpin's application could only be granted by a unanimous vote of the board's three members. See G. L. c. 40A, § 9, twelfth par. Here, two board members voted in favor of granting Sunpin's application and one member, Reynolds, voted against it, which meant the application was denied. Because of the unanimity requirement, only Reynolds's findings and reasoning had any practical effect on the outcome of the application. Therefore, Reynolds's statement of reasons is the decision of the board for purposes of this appeal and "the point of departure for the court's review." Britton, 59 Mass. App. Ct. at 72.

c. Statutory and regulatory background. General Laws c. 40A, § 3, portions of which are often referred to as the Dover Amendment, "represents a specific exception to the general power of municipalities to adopt and enforce zoning regulations and by-laws." Regis College v. Weston, 462 Mass. 280, 289 (2012). The amendment "was originally enacted to prevent municipalities from restricting educational and religious uses

of land, but the Legislature has expanded the statute over time to ensure that other land uses would be free from local interference" (quotation, citation, and alteration omitted). Tracer Lane, 489 Mass. at 778-779. One such protected use is solar energy generation.

Paragraph nine of the Dover Amendment states that "[n]o zoning ordinance or by-law shall prohibit or unreasonably regulate the installation of solar energy systems or the building of structures that facilitate the collection of solar energy, except where necessary to protect the public health, safety or welfare." G. L. c. 40A, § 3, ninth par. This paragraph is intended "to help promote solar energy generation throughout the Commonwealth." Tracer Lane, 489 Mass. at 779. As we explained in Tracer Lane, "[t]hat statutory language provides municipalities with more flexibility than statutory protections for land use for education, religion, and child care, which allow only for reasonable regulations on such matters as bulk and height." Id. at 780, citing G. L. c. 40A, § 3, second par. ("No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes . . . ; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of

structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements").

Also, in contrast to other uses protected by the Dover Amendment, paragraph nine does not expressly preclude a special permit requirement.  Contrast G. L. c. 40A, § 3, first par. ("No zoning ordinance or by-law shall . . . require a special permit for the use of land for the primary purpose of commercial agriculture . . ."); G. L. c. 40A, § 3, third par. ("No zoning ordinance or by-law . . . shall . . . require a special permit for . . . the use of land or structures, or the expansion of existing structures, for the primary, accessory or incidental purpose of operating a child care facility . . .").  A municipality may, therefore, require a special permit for a solar energy system, so long as the special permit requirements are no more restrictive than those allowed by paragraph nine. Cf. PLH LLC vs. Ware, Mass. Land Ct., No. 18 MISC 000648, slip op. at 6, 8 (Dec. 24, 2019) (Piper, C.J.), aff'd, 102 Mass. App. Ct. 1103 (2022).

d.  The special permit requirements and the bylaw provisions.  In this case, the parties do not dispute that a special permit requirement is permissible under paragraph nine. They do, however, disagree about the extent of the board's discretion to deny a special permit for a solar project under

the town's bylaw. The disagreement relates to which provisions in the bylaw are applicable to the special permit inquiry.

The board's decision denying Sunpin's special permit application cited three different provisions in the bylaw, §§ 18, 11, and 1. As stated in § 18.1, the purpose of that section is to "facilitate the creation of new large-scale solar electric installations by providing standards" for their construction and operation that, among other things, "minimize impacts on the [town's] environmental, scenic, natural and historic resources." Whereas § 18.1.a allows for "large-scale ground-mounted solar electric installation[s]" as of right in the town's SEOD, such facilities to be sited outside of this one parcel require a special permit. Every large-scale ground-mounted installation in the town must be "consistent with all applicable local, [S]tate and [F]ederal requirements," meet various other specifications relating to lighting, signage, noise, and the like, and undergo site plan review. Additionally, § 18.9.b states that "[c]learing of natural vegetation [for large-scale ground-mounted installations] shall be limited to what is necessary for the construction, operation and maintenance of the installation or otherwise prescribed by applicable laws, regulations, and bylaws."

Section 11.2 of the bylaw also describes the board's discretion to grant special permits generally; it explains that the board may grant a special permit if it has

> "found that the use involved will not cause or give rise to noise, odor, dust, refuse, exterior lighting, traffic or other considerations which would be offensive or detrimental to the present or future character of the neighborhood or the community and if the [b]oard finds that the proposed use will not derogate from the intent and purpose of this By-law."

That intent and purpose is set forth in § 1 of the bylaw as follows:

> "The purpose of this By-law is to promote the health, safety and general welfare of the inhabitants of Petersham; to lessen the danger from fire; to maintain the beauty of the [t]own; to secure the proper growth of the [t]own by encouraging the most appropriate use of land and buildings; and to stabilize the value of property; all as authorized by [G. L. c. 40A] . . . ."

In the plaintiffs' view, the special permit process for solar projects should resemble site plan review: in other words, where a solar project complies with the solar-specific provisions in a bylaw, which in this case are those required by § 18, the permit must be granted.

The board responds that by its text paragraph nine allows for both reasonable regulation, including the regulations and conditions provided by § 18, and more general regulations and prohibitions "necessary to protect the public health, safety or welfare," which are referenced elsewhere in the bylaw, including §§ 1 and 11.2. See G. L. c. 40A, § 3, ninth par. In the

board's view, "[t]his represents at most a marginal tightening of the standard that all zoning must meet under G. L. c. 40A, § 1A (the statutory definition of zoning):  'ordinances and by-laws, adopted by cities and towns to regulate the use of land, buildings and structures to the full extent of the independent constitutional powers of cities and towns to protect the health, safety and general welfare of their present and future inhabitants.'"

We conclude that the board's powers in regard to special permits for solar energy systems are not limited to the site-specific conditions that may be imposed pursuant to § 18, and that the board may also deny a special permit for such a project if the denial is "necessary to protect the public health, safety or welfare" as provided in paragraph nine and a relevant bylaw provision incorporating this standard.  G. L. c. 40A, § 3.  See PLH LLC, No. 18 MISC 000648, slip op. at 7 ("[T]here is no good support in the cases or in the court's experience for an absolute legal requirement that a municipality -- which wishes to regulate by special permit a [Dover Amendment] protected use -- may do so only by the enactment of a particularly drafted special permit bylaw provision which is focused just on [that] specific [protected] use" [emphasis added]).  The word "necessary," however, must be understood according to its plain meaning.  Allen v. Boston Redev. Auth., 450 Mass. 242, 256

(2007) ("Where a statutory term is not defined, it must be understood in accordance with its generally accepted plain meaning").

Paragraph nine thus affords municipalities only a "narrow ambit" within which they may properly deny a special permit for solar energy system. PLH LLC, No. 18 MISC 000648, slip op. at 8. The requirement that the denial be "necessary to protect the public health, safety or welfare" is not therefore just a "marginal" tightening of the town's zoning powers, as the board contends. "[N]ecessary to protect the public health, safety or welfare," the standard imposed by paragraph nine, narrows the scope of the town's bylaw, the purpose of which is "to promote the health, safety and general welfare" of the town's inhabitants. See G. L. c. 40A, § 3, ninth par. What is "necessary to protect" is more restrictive than what may be deemed to "promote." With this understanding of the statutory requirements, we turn to the board's application of the bylaw in the instant case.

e. The board's application of the standards and criteria. The board properly applied § 18 and also permissibly considered additional bylaw provisions, which incorporate the "necessary to protect the public health, safety or welfare" standard from paragraph nine. G. L. c. 40A, § 3, ninth par. See Shirley Wayside Ltd. Partnership, 461 Mass. at 474, citing Britton, 59

Mass. App. Ct. at 73-74.  The board did not, however, apply the paragraph nine restrictions correctly.  See Shirley Wayside Ltd. Partnership, supra at 475.

Instead of deciding whether the denial of the permit here was necessary to protect the public health, safety, or welfare, the board determined that "significant tree cutting" or "substantial destruction of natural resources without clear community benefits" for the installation of solar energy systems should be avoided "because it would not encourage the most appropriate use of land."  The board also speculated that the approval of this special permit would facilitate "the usual, unfortunate trajectory" of development and fragmentation of natural lands.

Denying the special permit application if it requires any deforestation[5] or based on a conclusion that solar energy facilities do not provide "clear community benefits" was improper.  The same is true for denying the permit based upon hypothetical concerns about rampant future development.  See Britton, 59 Mass. App. Ct. at 75 (zoning board "may not deny a permit simply by conjuring a parade of horribles, particularly

---

[5] We note, as did the Appeals Court, that if the landowner were not attempting to permit a solar energy system, "nothing in the record or the bylaw suggests that a private property owner is restricted from cutting trees on his or her property." Sunpin Energy Servs., LLC, 105 Mass. App. Ct. at 648 n.12.

when it has the power to prevent them"). All of this constitutes a misapplication of the "necessary to protect the public health, safety or welfare" standard, which requires a zoning board to undertake a site-specific analysis to make that determination. See G. L. c. 40A, § 3, ninth par. See Sunpin Energy Servs., LLC, 105 Mass. App. Ct. at 649 ("there has been no showing that this particular parcel has unique characteristics that render it unsuitable to house a solar energy project -- aside from the fact that it is wooded").

Moreover, because the town is ninety-seven percent forested, denying the application if it causes significant tree cutting has the essential effect of creating a blanket prohibition on large-scale ground-mounted solar systems in all but three percent of the town. In Tracer Lane, 489 Mass. at 782, we likewise concluded that such an "outright ban" violates paragraph nine. See Prime v. Zoning Bd. of Appeals of Norwell, 42 Mass. App. Ct. 796, 802-803 (1997) ("the special permit may not be imposed unreasonably and in a manner designed to prohibit the [protected use], nor may the permit be denied merely because the board would prefer a different use of the locus, or no use"); PLH LLC, No. 18 MISC 000648, slip op. at 6 (special permit "cannot impose conditions that go beyond statutory limits provided under § 3, [and] cannot be used either directly or pretextually as a way to prohibit or ban the use"). As the

Appeals Court correctly recognized, "[w]ere [the board] to deny a special permit for any large-scale solar electric installation project that requires clearing trees, there would be no distinction between the town's scheme and the one declared unlawful in Tracer Lane" (citation omitted). Sunpin Energy Servs., LLC, 105 Mass. App. Ct. at 649-650.

The Legislature has made clear in the Dover Amendment the importance of solar energy systems to the Commonwealth as a whole, and its concern that local municipalities should support and not unduly interfere with the siting of such systems. See G. L. c. 40A, § 3, ninth par.; Tracer Lane, 489 Mass. at 779 (paragraph nine "was enacted to help promote solar energy generation throughout the Commonwealth"); PLH LLC, No. 18 MISC 000648, slip op. at 5 ("The purpose of the inclusion of solar use in [the Dover Amendment] is clear:  there is no doubt that it is to be protective and encouraging of these kinds of uses"). To essentially prohibit the siting of large-scale solar systems in a town that is ninety-seven percent forested based on concerns about tree cutting is therefore unreasonable. See Wendy's, 454 Mass. at 381-382.  See also B. McKibben, Here Comes the Sun 4, 145 (2025) (shifts toward solar energy generation "could take a real bite out of the grim predictions of climate scientists; the sun burns so we don't need to. . . .  [To achieve this, we] don't have to cover all, or most, or even much

of the landscape with solar panels.  But we need to cover some

. . .").

    f.  The required site-specific analysis.  We recognize that

paragraph nine's references to "health" and "welfare" embrace

the important documented benefits of forests -- each of which

affects residents' physical, emotional, or spiritual well-being.

See Opinion of the Justices, 333 Mass. 773, 778-779 (1955),

quoting Berman v. Parker, 348 U.S. 26, 33 (1954) ("[P]ublic

welfare . . . cannot be precisely defined. . . .  'The concept

of public welfare is broad and inclusive. . . .  The values it

represents are spiritual as well as physical, aesthetic as well

as monetary.  It is within the power of the [L]egislature to

determine that the community should be beautiful as well as

healthy, spacious as well as clean, well-balanced as well as

carefully patrolled'").  But see Smith v. New England Aircraft

Co., 270 Mass. 511, 522-523 (1930) ("[The term 'public welfare']

should be defined with some strictness, so as not to include

everything that might be enacted on grounds of mere expediency"

[citation omitted]).  Indeed, we have previously acknowledged

the myriad ways forested land can support health and welfare.

See New England Forestry Found., Inc. v. Assessors of Hawley,

468 Mass. 138, 149, 150-155 (2014) (forests serve "the public

good" by providing opportunities for recreation, meditation, and

education; dissipating stormwater runoff; filtering air and

water; and absorbing carbon and other harmful emissions).
Consequently, avoiding unnecessary deforestation is an
appropriate consideration for a board evaluating a special
permit application for a solar energy system.

Nevertheless, the special status and strong encouragement
of solar energy systems reflected in the Dover Amendment require
that the board consider the particular deforestation at issue --
in other words, the deforestation required to construct a
particular project at a specific site -- to determine whether
its avoidance is necessary to protect public health, safety, or
welfare.  That does not mean that preventing deforestation at a
particular site cannot be necessary for such protection given
the existence of other wooded areas or that the entire town must
be made available to be transformed into a solar energy parking
lot, as the board projected.  Rather, when considering a permit,
a site-specific analysis is required, as is a more comprehensive
review of the town's over-all regulation in regard to the siting
of large-scale solar energy systems, in order to determine
whether the town has provided reasonable opportunities for these
sitings.  See G. L. c. 40A, § 3, ninth par. (precluding
prohibition and allowing only reasonable regulation of solar
energy systems).  See also Tracer Lane, 489 Mass. at 781 (town

cannot preclude solar energy systems "in all but one to two percent of its land area").[6]

This dual analysis will inform whether the denial of the special permit is necessary to protect the public health, safety, or welfare at this particular location as provided by paragraph nine or reflective of a general prohibition or unreasonable regulation of solar energy systems that is precluded by the rest of paragraph nine. Such analysis ensures the application of the special permit requirement is "limited and narrowly applied in a way that is not unreasonable, is not designed or employed to prohibit the use or the operation of the protected use, and exists where necessary to protect the health, safety or welfare." PLH LLC, No. 18 MISC 000648, slip op. at 8.

For these reasons, we vacate the board's decision and order that the case be remanded to the board for reconsideration in light of this opinion. See Wendy's, 454 Mass. at 387-388 ("In the ordinary course, a reviewing judge is reluctant to order a board to implement particular relief," unless "remand is futile or would postpone an inevitable result"). This is not "one of the exceptional cases where a board can be ordered to grant a special permit." Buccaneer Dev. Inc. v. Zoning Bd. of Appeals

---

[6] For example, a town with limited green space that has provided for the siting of such large-scale solar energy systems elsewhere may have a more pronounced need to protect such limited green space.

of Lenox, 87 Mass. App. Ct. 871, 875 (2015), quoting Subaru of
New England, Inc. v. Board of Appeals of Canton, 8 Mass. App.
Ct. 483, 488 (1979).  See McLaughlin v. Zoning Bd. of Appeals of
Duxbury, 102 Mass. App. Ct. 802, 815 (2023) ("order directing
issuance of a permit is exceedingly rare").  Rather, the board
should apply the site-specific analysis required here, including
whether avoiding deforestation at this particular site is
necessary to protect the public health, safety, or welfare, and
if so, how this site differs from others in the town where large
solar energy systems may be sited.  See G. L. c. 40A, § 3, ninth
par.  See also McLaughlin, supra ("because the board denied the
special permit based on an incorrect interpretation of the
zoning bylaws . . . a remand is necessary to afford the board an
opportunity" to apply permissible considerations).[7]

_____

[7] Finally, we note that in the time since the board's 2021
denial of Sunpin's special permit application, the Legislature
enacted "An Act promoting a clean energy grid, advancing equity
and protecting ratepayers" (2024 Climate Act), St. 2024, c. 239,
§§ 5, 23, codified at G. L. c. 21A, § 30, and G. L. c. 25A,
§ 21.  The 2024 Climate Act directs the Department of Energy
Resources (DOER) to, among other things, promulgate standards
for siting and permitting of solar energy projects to evaluate
the social and environmental impacts of ground-mounted solar
installations, which DOER did earlier this year.  See G. L.
c. 25A, § 21 (b); 225 Code Mass. Regs. §§ 29.01-29.16 (2026).
It also provides that "[l]ocal governments acting in accordance
with [such] standards . . . shall be considered to have acted
consistent with the limitations on [solar energy system] zoning
under [paragraph nine of the Dover Amendment]").  G. L. c. 25A,
§ 21 (b).  See Albahari v. Zoning Bd. of Appeals of Brewster, 76
Mass. App. Ct. 245, 250-251 (2010) ("[T]he right to a permit
vests at the time the applicant is unconditionally entitled to

3.  Conclusion.  For the foregoing reasons, the board's denial of the special permit application was improper under G. L. c. 40A, § 3, ninth par.  Accordingly, we vacate the judgment of the Land Court and remand the matter to that court for entry of an order remanding the matter to the board for further proceedings consistent with this opinion.

So ordered.

---

its issuance.  Until that time, . . . the applicant is subject to any changes in zoning provisions that are properly noticed before the permit issues").